UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| MARIA MENESES, | ) | No. ED CV 16-1061-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on May 23, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on June 15, 2016, and June 21, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on February 7, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

1  Joint Stipulation under submission without oral argument.

2

3                                              **II.**

4                                      **BACKGROUND**

5          Plaintiff was born on April 3, 1960.  [Administrative Record ("AR") at 157.]  She has past

6  relevant work experience as a tractor-trailer truck driver, and cashier/sales clerk.  [AR at 22, 46.]

7          In August 2012, plaintiff filed an application for a period of disability and DIB, alleging that

8  she has been unable to work since August 1, 2011.  [AR at 15, 157.]  After her application was

9  denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an

10 Administrative Law Judge ("ALJ").  [AR at 15, 86.]  A hearing was held on May 29, 2014, at which

11 time plaintiff appeared represented by an attorney, and testified on her own behalf.  [AR at 27-48.]

12 A vocational expert ("VE") also testified.  [AR at 46-47.]  On October 2, 2014, the ALJ issued a

13 decision concluding that plaintiff was not under a disability from August 1, 2011, the alleged onset

14 date, through October 2, 2014, the date of the decision.  [AR at 15-23.]  Plaintiff requested review

15 of the ALJ's decision by the Appeals Council.  [AR at 7-8.]  When the Appeals Council denied

16 plaintiff's request for review on April 19, 2016 [AR at 1-5], the ALJ's decision became the final

17 decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam)

18 (citations omitted).  This action followed.

19

20                                             **III.**

21                               **STANDARD OF REVIEW**

22         Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

23 decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

24 evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

25 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

26         "Substantial evidence means more than a mere scintilla but less than a preponderance; it

27 is such relevant evidence as a reasonable mind might accept as adequate to support a

28 conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

1   and internal quotation marks omitted); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998)

2   (same).  When determining whether substantial evidence exists to support the Commissioner's

3   decision, the Court examines the administrative record as a whole, considering adverse as well

4   as supporting evidence.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);

5   <u>see</u> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

6   consider the entire record as a whole and may not affirm simply by isolating a specific quantum

7   of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is

8   susceptible to more than one rational interpretation, the ALJ's decision should be upheld." <u>Ryan</u>,

9   528 F.3d at 1198 (citation and internal quotation marks omitted); <u>see</u> <u>Robbins v. Soc. Sec. Admin.</u>,

10  466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

11  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")

12  (citation omitted).

13

14                                              **IV.**

15                              <u>**THE EVALUATION OF DISABILITY**</u>

16       Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

17  to engage in any substantial gainful activity owing to a physical or mental impairment that is

18  expected to result in death or which has lasted or is expected to last for a continuous period of at

19  least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.

20  1992).

21

22  **A.       THE FIVE-STEP EVALUATION PROCESS**

23       The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

24  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821,

25  828 n.5 (9th Cir. 1995), <u>as</u> <u>amended</u> April 9, 1996.  In the first step, the Commissioner must

26  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

27  claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in

28  substantial gainful activity, the second step requires the Commissioner to determine whether the

1   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

2   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

3   If the claimant has a "severe" impairment or combination of impairments, the third step requires

4   the Commissioner to determine whether the impairment or combination of impairments meets or

5   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

6   subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If

7   the claimant's impairment or combination of impairments does not meet or equal an impairment

8   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

9   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

10  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

11  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

12  prima facie case of disability is established.  Id.  The Commissioner then bears the burden of

13  establishing that the claimant is not disabled, because she can perform other substantial gainful

14  work available in the national economy.  Id.  The determination of this issue comprises the fifth

15  and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at

16  828 n.5; Drouin, 966 F.2d at 1257.

17

18  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

19         At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

20  August 1, 2011, the alleged onset date.[2]  [AR at 17.]  At step two, the ALJ concluded that plaintiff

21  has the severe impairments of degenerative disc disease of the neck; bilateral shoulder pain;

22  headaches; and back pain.  [Id.]  He found plaintiff's medically determinable mental impairment

23  of mood disorder to be non-severe.  [Id.]  At step three, the ALJ determined that plaintiff does not

24  have an impairment or a combination of impairments that meets or medically equals any of the

25  impairments in the Listing.  [AR at 19.]  The ALJ further found that plaintiff retained the residual

26

27  _____

28      [2]   The ALJ concluded that plaintiff met the insured status requirements of the Social
    Security Act through December 31, 2016.  [AR at 17.]

4

functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] "except occasional postural activities, but no ladders, scaffolds, or ropes; occasional above shoulder work bilaterally; and no unprotected heights or dangerous machinery." [Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a tractor-trailer truck driver as actually performed, and as a cashier/sales clerk as generally performed.  [AR at 22-23, 46-47.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of August 1, 2011, through October 2, 2014, the date of the decision.  [AR at 32.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) considered plaintiff's subjective symptom testimony; and (2) found that plaintiff can perform her past relevant work.  [JS at 2.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [JS at 3.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

credible, an ALJ must engage in a two-step analysis."[5] <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting <u>Lingenfelter</u>, 504 F.3d at 1036) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (<u>Robbins</u>, 466 F.3d at 883), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

---

[5] On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. <u>See</u> SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3, 2016 WL 1119029, at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." <u>Id.</u> Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." <u>Id.</u> at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." <u>Id.</u> at *2. The ALJ's 2014 decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. <u>Compare</u> <u>Ashlock v. Colvin</u>, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), <u>with</u> <u>Lockwood v. Colvin</u>, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing <u>Pope v. Shalala</u>, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, and neither party specifically contends that SSR 16-3p should apply herein, the Court need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

1   [those] symptoms limit [her] . . . ability to perform work-related activities . . . ."  SSR 16-3p, 2016

2   WL 1119029, at *4.  An ALJ must provide specific, clear and convincing reasons for rejecting a

3   claimant's testimony about the severity of her symptoms.  <u>Treichler</u>, 775 F.3d at 1102; <u>Benton v.</u>

4   <u>Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003).

5       Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

6   -- noting only that plaintiff "portrays herself . . . much more limited than supported by the objective

7   medical findings" -- did not make a finding of malingering[6] [<u>see</u> <u>generally</u> AR at 19-22], the ALJ's

8   reasons for rejecting a claimant's credibility must be specific, clear and convincing.  <u>Burrell v.</u>

9   <u>Colvin</u>, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir.

10   2012)); <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings

11   [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is

12   not credible and what evidence undermines the claimant's complaints."  <u>Burrell</u>, 775 F.3d at 1138

13   (quoting <u>Lester</u>, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be

14   sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's

15   testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

16   pain.'"  <u>Brown-Hunter</u>, 806 F.3d at 493 (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 345-46 (9th Cir.

17   1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an

18   adjudicator's rejection of a claimant's allegations of disabling pain."  <u>Bunnell</u>, 947 F.2d at 346.  As

19   such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  <u>Albalos v.</u>

20   <u>Sullivan</u>, 907 F.2d 871, 874 (9th Cir. 1990) (<u>per</u> <u>curiam</u>).

21       Here, the ALJ found plaintiff "partially credible" for the following reasons:

22       She has received conservative treatment of her pain complaints and has not
23       undergone any surgery for what she considers debilitating work-related injuries. The
          medical records indicate [plaintiff] portrays herself more [sic] much more limited than
          supported by the objective medical findings.   She asserts she has severe
24

25       [6]  Although defendant argues that "the record does contain *evidence of malingering*" [JS at
26   11 (emphasis added) (citing AR at 290 (noting that testing done by the chiropractor suggested an
      "inconsistency between the objective findings and present subjective complaints indicative of
27   symptom magnification"), 302 (noting that the orthopedic examiner found plaintiff to be
      "inconsistent" during her range of motion testing, "suggesting symptom exaggeration"))], the ALJ
28   did not make a finding of malingering.

headaches, but she does not receive any kind of specific treatment for them. [Plaintiff] takes medications for pain and sleep difficulties. Additionally, she is quite active. [Plaintiff] attends to personal care, cooks, cleans, drives, shops, attends church sometimes, and cares for her grandchildren.

[AR at 22.]

### 1.    Conservative Treatment for Injuries and Pain

The ALJ discounted plaintiff's allegations because other than medications to treat her injuries, pain, and sleep difficulties, she has not undergone any surgery, and "does not receive any kind of specific treatment" for her headaches. [Id.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Here, however, plaintiff has been treated with prescription pain medications, including the narcotic pain medication, Norco (hydrocodone). [AR at 207, 535.] Plaintiff also received chiropractic treatment, acupuncture, and physical therapy, none of which was effective. [See AR at 445 (noting that plaintiff "in general has failed conservative care" and may need injections or surgery), 516 (noting that "conservative treatment including physical therapy and acupuncture" had failed); see also AR at 301, 308, 334.] In addition, the record reflects that a TENS unit, hot/cold therapy, a neck collar, and a lumbar back support were also recommended. [AR at 510-11, 585.] The agreed-medical examiner noted that plaintiff's pain management doctor recommended epidural steroid injections, "and, if these were not successful, spine surgery for her neck and low

back."  [AR at 335; see also AR at 585, 593.]   Indeed, the fact that plaintiff has been recommended to receive spinal injections and/or surgery -- whether or not she has yet received those treatments to help control her pain -- is itself relevant for purposes of determining whether treatment has been "conservative."  See Meanel, 172 F.3d at 1114 (stating that a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain" may be evidence of conservative treatment).  The agreed-medical examiner also noted that authorization for the injections had never been obtained from plaintiff's insurance carrier.  [AR at 335.]  Similarly, with respect to the ALJ's observation that plaintiff does not receive any specific treatment for her headaches, the Court notes that although plaintiff had been referred to a neurologist for treatment of her headaches [AR at 444], there is no indication that a neurological consultation was ever authorized.  Moreover, the ALJ failed to point to anything in the record to show that any specific treatment other than the medication and treatment plaintiff was receiving or had been recommended to receive would be a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments.

Based on this record, the Court cannot not find that the ALJ's conclusion that plaintiff's treatment history has been conservative in nature is supported by the record.  Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 2.    Objective Medical Evidence

The ALJ also found that the objective evidence does not support plaintiff's subjective symptom allegations.  [See AR at 22.]  Specifically, he stated that "[a]lthough [plaintiff] has persistent pain complaints, the medical records indicate they are disproportionate to the objective findings," and "indicate [plaintiff] portrays herself more [sic] much more limited than supported by the objective medical findings."  [Id.]  Plaintiff argues that "the nature of pain testimony [is] that it is not necessarily tied to the severity of the underlying condition."  [JS at 6-7 (citations omitted).]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in

1   evaluating symptom testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

2   ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it

3   is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d

4   853, 857 (9th Cir. 2001).

5          Here, however, the ALJ reviewed the medical evidence, and then gave "little weight" to all

6   of plaintiff's treating and consultative examining physicians, except for the agreed-upon

7   orthopedist, Dr. Rudner, whose opinion he gave "some weight."  [See, e.g., AR at 20-21].  Dr.

8   Rudner found plaintiff capable of lifting and/or carrying up to 20 pounds occasionally, and 5

9   pounds frequently, standing and/or walking and/or sitting less than six hours per eight-hour day,

10  "pushing and/or pulling limited by spine and upper extremity conditions, occasional postural

11  activities, frequent manipulation [handling, fingering, feeling, seeing, hearing and speaking], and

12  avoid cold damp environments."  [AR at 21 (see also AR at 413-14).]  The ALJ noted that plaintiff's

13  "description of her activities of daily living indicates she is capable of more lifting and/or carrying

14  than 5 pounds and standing, walking, and sitting, each, for at least 6 hours in an 8-hour workday."

15  [AR at 21.]  He also determined that "[g]iven [plaintiff's] disproportionate pain complaints, [Dr.

16  Rudner's] cold damp environment restriction appears unwarranted."  [Id.]  The ALJ then gave

17  "great weight" to the opinion of the State agency reviewing consultants that plaintiff was capable

18  of a range of light work, "because the record best supports it."  [Id. (citing AR at 49-60, 62-72).]

19

20         As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony

21  is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of

22  that conclusion, is insufficient."  Treichler, 775 F.3d at 1103 (citation omitted).  The "ALJ must

23  identify the testimony that was not credible, and specify 'what evidence undermines the claimant's

24  complaints.'"  Id. (citation omitted); Brown-Hunter, 806 F.3d at 493.  Here, the ALJ did not identify

25  the testimony he found not credible and "link that testimony to the particular parts of the record"

26  supporting his non-credibility determination.  Brown-Hunter, 806 F.3d at 494.  In short, "[t]his is

27  not the sort of explanation or the kind of 'specific reasons' we must have in order to review the

28  ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not

1   arbitrarily discredited," nor can the error be found harmless.  Id. at 493 (rejecting the

2   Commissioner's argument that because the ALJ set out his RFC determination and summarized

3   the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's

4   testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified

5   *which* testimony [he] found not credible, and never explained *which* evidence contradicted that

6   testimony") (citing Treichler, 775 F.3d at 1103; Burrell, 775 F.3d at 1138).

7       Thus, this was not a specific, clear and convincing reason for discounting plaintiff's

8   subjective symptom testimony.[7]

9

10      **3.    Daily Activities**

11      The ALJ found that plaintiff "is quite active [and] attends to personal care, cooks, cleans,

12  drives, shops, attends church sometimes, and cares for her grandchildren."  [AR at 22.]

13      An ALJ may discredit testimony when plaintiff reports participation in everyday activities

14  indicating capacities that are transferable to a work setting.  Molina, 674 F.3d at 1113.  Moreover,

15  "[e]ven where those activities suggest some difficulty functioning, they may be grounds for

16  discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating

17  impairment."  Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010);

18  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

19      Plaintiff contends that her ability to engage in the activities mentioned by the ALJ does not

20  mean that she "will be able to hold down a job."  [JS at 9.]  She also notes that she "does not need

21  to be completely incapacitated in order to be determined disabled."  [JS at 8-9 (citations omitted).]

22  Here, the ALJ identified the daily activities that he found demonstrated a "better physical capacity"

23  than plaintiff stated in the record.  [AR at 22.]  However, the amount of involvement plaintiff

24  described in these activities was minimal.  For instance, she testified that although she cooks, it

25  

26      [7]   As discussed herein, the ALJ's other reasons for discounting plaintiff's subjective symptom
    testimony are not specific, clear and convincing.  Because the objective evidence by itself cannot
27  be the only reason for discounting a claimant's testimony, even assuming this reason was specific,
    clear and convincing, remand is still warranted to reconsider plaintiff's subjective symptom
28  testimony.

takes her much longer to cook now than it did prior to her accident -- between an hour and two hours more to do it [AR at 37, 187 (does light cooking that does not require her to stand for long periods of time or do a lot of stirring)]; she "ha[s] to cook" because she "ha[s] no help" [id.]; she does not mop, and when she sweeps, she does so very slowly, and only "sweep[s] the things that have to be swept," otherwise, her daughters do the sweeping [AR at 38]; she sometimes has to go to the grocery store "because there's no one to do it for" her, and her daughters or husband go with her to carry the bags [AR at 43, 188]; she watches her almost-two-year-old granddaughter during the day, but changes her diapers on the floor [AR at 44]; she goes to church for an hour once a month and makes it through the service because she is able to sit and stand up during the service [AR at 44-45]; she can drive for about 50-80 miles before pain starts in her upper back and shoulders [AR at 188]; and she does not use the computer or take the dog for walks.  [AR at 45.] The ALJ did not explain how this level of activity describes a person capable of engaging in even basic work activity or how it is otherwise inconsistent with plaintiff's subjective symptom testimony. [AR at 22.]

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 4.    Conclusion

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain.  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).

Remand is warranted on this issue.

## B.    STEP FIVE

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform her past relevant work, the VE generally will refer to the Dictionary of Occupational Titles ("DOT").  See Light, 119 F.3d at 793.  The DOT is usually "the best source for how a job is

1    generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  SSR 00-4p explicitly

2    requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether

3    there is a reasonable explanation for any deviation.  See SSR 00-4p (stating that an ALJ must

4    inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with

5    the DOT).[8]  The procedural requirements of SSR 00-4p ensure that the record is clear as to why

6    an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with

7    the DOT.  Massachi, 486 F.3d at 1153.  In making disability determinations, the ALJ may rely on

8    VE testimony that contradicts the DOT, but only insofar as the record contains persuasive

9    evidence to support the deviation.  Light, 119 F.3d at 793; Johnson, 60 F.3d at 1435; Massachi,

10   486 F.3d at 1153.  Although evidence provided by a VE "generally should be consistent" with the

11   DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."

12   SSR 00-4p.  Thus, an ALJ must first determine whether a conflict exists, and if it does, he must

13   then determine whether the VE's explanation for the conflict is reasonable and whether a basis

14   exists for relying on the expert rather than the DOT.  Id.

15        Only after determining whether the testimony of the VE has deviated from the DOT, and

16

17   _____

     [8]   SSR 00-4p provides in relevant part:

18

19        When a VE . . . provides evidence about the requirements of a job or occupation,
          the [ALJ] has an affirmative responsibility to ask about any possible conflict between
          that VE . . . evidence and information provided in the DOT. . . .

20        . . . .

21        If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a
          reasonable explanation for the apparent conflict.

22        . . . .
          When vocational evidence provided by a VE . . . is not consistent with information

23        in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . .
          evidence to support a determination or decision that the individual is or is not

24        disabled. The [ALJ] will explain in the determination or decision how he or she
          resolved the conflict.  The [ALJ] must explain the resolution of the conflict

25        irrespective of how the conflict was identified.

26   SSR 00-4p (emphasis added).  SSR 00-4p similarly provides that "[w]hen there is an apparent

27   unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable
     explanation for the conflict before relying on the VE . . . evidence to support a determination or

28   decision about whether the claimant is disabled."  Id. (emphasis added).

whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination.  Massachi, 486 F.3d at 1152-54.  Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony.  See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

Plaintiff's RFC limits her to occasional above-shoulder work bilaterally, and no unprotected heights or dangerous machinery, and the ALJ's hypothetical to the VE included these limitations. [AR at 19, 47.]  The DOT describes the physical demands for the occupations of "tractor-trailer truck driver" (DOT No. 904.383-010), and "cashier/sales clerk" (DOT No. 290.477-014) as requiring *frequent* reaching.  Plaintiff contends, therefore, that her RFC would preclude her from performing her past relevant work.  [JS at 13-18.]  She also argues that the job of tractor-trailer driver would require her to handle dangerous machinery.  [JS at 15-16.]

### 1.    Overhead Reaching

Plaintiff notes that reaching is described by the Social Security Administration as "extending the hands and arms *in any direction*."  [JS at 15 (citing SSR 85-15 (emphasis added).]  She argues, therefore, that the frequent reaching requirement for her past employment exceeds her functional limitation to only occasional overhead reaching bilaterally and, because the ALJ failed to identify and obtain a reasonable explanation from the VE regarding this deviation from the DOT, reversal is warranted.  [JS at 13-18.]

Defendant responds that there is no conflict between plaintiff's overhead reaching limitation and the VE's testimony that an individual with that limitation could perform the requirements for the two representative occupations.  [JS at 18-20.]  To support her argument, defendant relies on Gutierrez v. Colvin, 2016 WL 4056067, at *1 (9th Cir. July 29, 2016) (unpublished), for its holding that "[b]ecause the DOT fails to specify that the ability to reach *overhead with both hands* is

1   required to perform cashier work, there was no apparent conflict between the VE's conclusion that

2   Gutierrez could perform cashier work and the DOT's generic job description." [JS at 19 (citing

3   Gutierrez, 2016 WL 4056067, at *1).]  Gutierrez, however, has since been withdrawn and is

4   superceded by the published opinion in Gutierrez v. Colvin ("Gutierrez II"), 844 F.3d 804 (9th Cir.

5   2016). [JS at 14.]  The language relied on by defendant does not appear in Gutierrez II.  Instead,

6   the Ninth Circuit held that "an ALJ must ask follow up questions of a vocational expert when the

7   expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation

8   doesn't extend to unlikely situations or circumstances."  Gutierrez II, 844 F.3d at 808.  Thus,

9   "where the frequency or necessity of a task is unlikely and unforeseeable -- as it is with cashiers

10  having to reach overhead -- there's no . . . obligation" to ask follow up questions of the VE.  Id.

11  The court illustrated this obligation by noting that "anyone who's made a trip to the corner grocery

12  store knows that while a *clerk* stocking shelves has to reach overhead frequently, the typical

13  *cashier* never has to."  Id. at 808 (emphasis added).  In other words, "[f]or a difference between

14  an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be

15  obvious or apparent.  This means that the testimony must be at odds with the [DOT's] listing of

16  job requirements that are essential, integral or expected. . . . [W]here the job itself is a familiar one

17  -- like cashiering -- less scrutiny by the ALJ is required."  Id.  Acknowledging, however, that there

18  may be exceptional circumstances where cashiers may have to reach overhead, the Ninth Circuit

19  found that the "requirement for an ALJ to ask follow up questions is fact-dependent."  Id. at 808-

20  09.

21       In this case, the VE found that plaintiff could perform her past relevant work as a

22  cashier/sales clerk, DOT number 290.477-014,[9] as generally performed.  [AR at 22.]  The DOT

23  job description for this position not only includes cashiering, however, it also includes stocking

24  shelves and obtaining merchandise for customers.  DOT No. 290.477-014 (sales clerk position

25  includes such tasks as "accepts payment and makes change" in retail store; "[s]tocks shelves,

26  counters, or tables with merchandise").  Indeed, plaintiff reported that in addition to cashiering, she

27  _____

28       [9]   The DOT entitles this occupation simply as "sales clerk."  DOT No. 290.477-014.

had to "restock shelves and [the] walk-in cooler." [AR at 197.] Plaintiff observes that because she is also "limited to no ladders, ropes, or scaffolds . . . she would have to reach above her shoulders to clean and stock high shelves." [JS at 17.] This position, therefore, as actually and generally performed -- and, as generally understood to be an essential, integral, or expected part of the job -- includes tasks that require overhead lifting. See Gutierrez II, 844 F.3d at 808 ("anyone who's made a trip to the corner grocery store knows that . . . a clerk stocking shelves has to reach overhead frequently"). As such, in light of plaintiff's limitation to occasional overhead reaching bilaterally, and the resulting conflict between plaintiff's RFC and essential requirements for this position, the ALJ had a duty to ask follow up questions.[10] His failure to do so was error.

The ALJ also found that plaintiff could do her past relevant work as a tractor-trailer truck driver as actually performed, which he found she had performed at the light level. [AR at 22.] Plaintiff described her truck driver position as including the following tasks: operating an 18-wheeler truck "for extended periods of time and over long distances"; transporting and delivering freight in a safe, timely manner; dropping, hooking, and switching equipment; and hooking and unhooking trailers. [AR at 191-93.] She testified at the hearing that her obligations included inspecting the vehicle; checking the tires; "picking up the feet of the trailer . . . and lowering them down"; and connecting and disconnecting the trailer. [AR at 32.] Occasionally she would have to lift items up to ten pounds, as well as items "that were a little bit more heavy." [AR at 32, 191-93.] Plaintiff explained to the agreed-medical examiner that "she had to manually crank the landing gear up and down to hook/unhook trailers, which required a lot of force with her upper extremities, while she was in a bent position," and "sometimes had to unload boxes of freight from the trailer [weighing up to 25 pounds], one by one." [AR at 330.]

The position of tractor-trailer truck driver is described by the DOT as requiring frequent reaching, and plaintiff contends that frequent *overhead* reaching is required to properly perform

10      This is not the situation referenced in Gutierrez II where the claimant was found to have an overhead reaching limitation only with her right arm and, therefore, was not "prevented . . . from reaching overhead with her *left* arm." Gutierrez II, 844 F.3d at 809 n.2. Here, plaintiff is limited to occasional reaching *bilaterally*.

1    that job.  [JS at 15-16.]  For instance, she notes that to get into the cab, an individual has to reach

2    overhead to pull themselves up into the truck, may need to reach overhead to get into the sleeping

3    area, and may also need to reach overhead to help load and unload the tractor-trailer.  [JS at 16.]

4    However, plaintiff presents no evidence that these sorts of "requirements" would be anything more

5    than "occasional."  Additionally, plaintiff did not testify that as she performed the job, she helped

6    to load and unload the truck -- in fact, she testified that she rarely lifted items over ten pounds.

7    [AR at 32, 191-93 ("occassionaly [sic] I would help carry boxes that were less than 10 lbs.  About

8    72 steps.  I only did this when it was needed").]

9         However, the State agency medical consultants found plaintiff capable of lifting and/or

10   carrying "*including upward pulling*," up to 10 pounds frequently, and up to 20 pounds occasionally.

11   [AR at 68 (emphasis added).]  Other than the general observation that as generally performed the

12   tractor-trailer occupation is medium-level work, requiring frequent lifting or carrying up to 25

13   pounds and occasional lifting of no more than 50 pounds, there is no evidence in the record that

14   the VE or the ALJ considered the amount of force that might be required to hitch and unhitch the

15   trailer, and whether that might exceed plaintiff's RFC limitation to lifting or carrying up to 10 pounds

16   frequently and 20 pounds occasionally, and occasional bending.  Because the matter is being

17   remanded to reconsider plaintiff's subjective symptom testimony, and whether plaintiff is capable

18   of performing her past relevant work, when determining whether plaintiff is capable of performing

19   her past relevant work as a tractor-trailer truck driver, the ALJ shall also consider, with the

20   assistance of a VE if warranted, whether, given plaintiff's RFC limitations, she is capable of

21   performing this occupation as actually performed, taking into consideration the fact that one of the

22   tasks she was required to perform was hitching and unhitching the trailer.

23

24        **2.    Dangerous Machinery**

25        Plaintiff also appears to contend that a tractor-trailer, by definition, is "dangerous

26   machinery."  [Id.]  She notes that a tractor-trailer driver has to apply knowledge of commercial

27   driving regulations, and have skill in maneuvering the vehicle in difficult situations, such as narrow

28   passageways.  [Id.]  She points out that the fact that a "tractor-trailer can be very dangerous

machinery" is evidenced "by the fact that plaintiff was hurt when her driving partner lost control of the tractor-trailer and it went into the ditch and turned over." [JS at 16 (citing AR at 18).] By this logic, any occupation that involves driving a vehicle could be considered to involve "dangerous machinery." Moreover, although the DOT does not specifically address "dangerous machinery," many of the cases interpreting whether an occupation requires work around "dangerous machinery," involve machinery with moving mechanical parts, hand tools, power tools, bench machines, and other motorized equipment. The job description for the tractor-trailer truck driver provides that the hazards of "moving mechanical parts," radiation, high exposed places, electric shock, explosives, and toxic caustic chemicals, are "not present" and "do[] not exist." Plaintiff has not shown that driving a vehicle -- which admittedly has moving parts -- even one requiring special training and/or skills, is equivalent to an occupation involving "dangerous *machinery*." Thus, no conflict existed between the DOT and plaintiff's RFC limitation to no dangerous machinery.

Remand is not warranted on this issue.


## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons,

18

supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Second, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a cashier/sales clerk as generally performed; or as a tractor-trailer truck driver, as actually performed, including consideration of the fact that one of the tasks performed by plaintiff was to hitch and unhitch the trailer.[11]  If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

/

/

/

/

/

/

/

/

/

---

[11]   Nothing herein is intended to disrupt the ALJ's finding that, at best, plaintiff is limited to a range of light work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  February 14, 2017

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE